UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JALENE GILBERT AND TOM GILBERT, | |
| Plaintiffs, | Case No. 1:11-cv-00272-BLW |
| v. | **MEMORANDUM DECISION AND ORDER** |
| BANK OF AMERICA CORPORATION; a corporation of unknown origin; BANK OF AMERICA, N.A. AS SUCCESSOR TO COUNTRYWIDE HOME LOANS, INC., a Delaware Corporation; BAC HOME LOANS SERVICING, L.P., limited partnership of unknown origin and a wholly-owned subsidiary of Bank of America, N.A.; BAC GP, LLC, a limited liability company of unknown origin and a wholly-owned subsidiary of Bank of America, N.A.; RECONTRUST COMPANY, N.A., a corporation of unknown origin and a wholly- owned subsidiary of Bank of America, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., a Delaware corporation; FEDERAL NATIONAL MORTGAGE ASSOCIATION, a Federally Chartered Corporation; and DOES 1-10 as individuals or entities with an interest in the property commonly known as:  11772 Purple Sage Road, Middleton, Idaho  83644, | |
| Defendants. | |

Before the Court are Defendants' Motion to Dismiss the First Amended Complaint (Dkt. 13), Defendants' Motion to Take Judicial Notice re: Motion to Dismiss (Dkt. 14), Defendants' Motion to Take Judicial Notice re: Reply Memorandum (Dkt. 22), and Plaintiffs' Second Motion to Amend Complaint (Dkt. 26). The matters are briefed, and the Court has determined that oral argument would not significantly assist the decisional process. Based on the record and pleadings before it, the Court will grant the Motions for Judicial Notice and Motion to Dismiss, and deny the Motion to Amend Complaint.

## BACKGROUND

On September 21, 2007, Plaintiffs obtained a $405,000 mortgage loan to refinance their property at 11772 Purple Sage Road in Middleton, Idaho, 83644. The loan was memorialized in a promissory note and secured by a Deed of Trust, naming Capital One Home Loans, LLC as lender, Lawyers Title Realty Service as trustee, and MERS as the beneficiary and "nominee for Lender and Lender's successors and assigns." Ex. B to *Dina Aff.*, Dkt. 14-3 at 3. Plaintiffs acknowledge that at some point, they defaulted on their mortgage payments. *First Am. Compl.*, Dkt. 11 ¶ 43.

On December 28, 2010, the beneficial interest in the Deed of Trust was assigned to BAC Home Loans Servicing, LP (BACHLS) – now known as BANA. Ex. C to *Dina Aff.*, Dkt. 14-5. Some months later, Plaintiffs received notice that BANA was the loan servicer, and that "FNMA" – otherwise known as Fannie Mae — was the creditor to whom the debt was owed. Ex. A to *First Am. Compl.*, Dkt. 11-1. A Notice of Default was issued December 28, 2010, indicating that Plaintiffs' account was $14,497.56 in arrears. Ex. A to *Compl.*, Dkt. 1-1. Also on December 28, ReconTrust was appointed

successor trustee.  Ex. C to *Compl.*, Dkt. 1-3.  The corporation assignment of deed,
Notice of Default, and appointment of corporate successor were all recorded on
December 29, 2010.  There is no evidence of a recorded assignment to FNMA.  On
January 12, 2011, Plaintiffs were served with a Notice of Trustee's Sale, upon failure to
cure their default; the Notice was recorded on March 29, 2011.  Ex. E to *Compl.*, Dkt. 1-
5.  A foreclosure sale has yet to take place.

Plaintiffs filed this action June 10, 2011, with a single claim to quiet title to the
property.  According to Plaintiffs, the "owner" of the loan is unknown, thus no party has
authority to foreclose on the property.  This Court granted Defendants' Motion to
Dismiss on September 15, 2011, but with leave to amend within 14 days.  *Mem. Dec. &*
*Ord.*, Dkt. 9.  Plaintiffs filed a First Amended Complaint on September 22, 2012,
amending their quiet title claim and adding the following claims:  (1) violation of the Fair
Debt Collection Practices Act, 15 U.S.C. § 1692; (2) mail fraud in violation of 18 U.S.C.
§ 1341; (3) fraud; (4) breach of fiduciary duty and the covenant of good faith and fair
dealing; and (6) intentional infliction of emotional distress.  *First Am. Compl.*, Dkt. 11.

Defendants move to dismiss the First Amended Complaint under Federal Rule of
Civil Procedure 12(b)(6).  Defendants also ask the Court to take judicial notice of
documents supporting their opening and reply memoranda in support of the Motion to
Dismiss.  Plaintiffs oppose dismissal, and object to judicial notice of the promissory note
only.  In addition, Plaintiffs move for leave to file a second Amended Complaint, to
which Defendants object.

## DISCUSSION

Although Plaintiffs raise several causes of action and claims for relief in their First Amended Complaint, the essence of the suit challenges the securitization of their mortgage, which Plaintiffs allege clouded title to their property.  Plaintiffs ask the Court to find that the securitization of their mortgage and procedural irregularities in the foreclosure process amounted to fraud.  Among other claims for relief, Plaintiffs further ask that the Court order Defendants to produce the original note, and that the Court determine each of the parties' interests in the property.

**1.     Motions to Take Judicial Notice**

The Court first addresses Defendants' requests that the Court take judicial notice of the following documents: (1) Promissory Note, (2) Deed of Trust, (3) Corporation Assignment of Deed of Trust, (4) Notice of Default, (5) Affidavit of Service by Mail, (6) Report and Recommendation on Motion to Dismiss, Case No. 1:10-cv-000632-EJL-REB, (7) Report and Recommendation, Case No. 1:11-cv-00193-EJL-CWD, and (8) Home Affordable Modification Agreement, dated January 29, 2010.  *Mots. to Take Jud. Not.*, Dkts. 14, 22.  Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice.  *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987).  The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment.  *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866 (9th Cir. 2004).

The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Any documents not attached to a complaint, however, may be considered only if their authenticity is not questioned and the complaint necessarily relies on the documents. *Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). Of particular relevance here, a court may consider recorded real estate documents. *United States v. Richie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

Plaintiffs in this case have not objected to the Deed of Trust, the Assignment of Deed of Trust, the Notice of Default, the Affidavit of Service, the Report and Recommendations from Case Nos. 1:10-cv-000632-EJL-REB and 1:11-cv-00193-EJL-CWD, or the Home Affordable Modification Agreement. *Opp. To Jud. Not.*, Dkt. 18. Also, these documents meet the criteria for judicial notice in that each is either in the public record or was attached and referred to in Plaintiffs' initial or amended complaints. Thus, the Court will take judicial notice of those seven documents.

Plaintiffs have objected to judicial notice of the Promissory Note. However, Plaintiffs reference the Note in their initial complaint, alleging that "[o]n or about September 21, 2007, [Plaintiffs] executed a Promissory Note payable to the order of Capital One Home Loans, LLC. *Compl.*, Dkt. 1 ¶ 10. In opposing judicial notice of the Note, Plaintiffs do not contend that any of the terms of the Note are inaccurate, or that it

does not bear their signatures.  And notably, they do not object to judicial notice of the Deed of Trust which specifically refers to the Note. *Dina Aff.*, Ex. B, Dkt. 14-3.

Instead, Plaintiffs' objection to – or unwillingness to admit – the authenticity of the Note appears to be related to their contention that Bank of America must produce the original Note to proceed with the foreclosure.  As will be discussed further below, this argument has been repeatedly rejected by the courts.  *Trotter v. New York Mellon*, 275 P.3d 857, 862 (Idaho 2012); *Cherian v. Countrywide Home Loans, Inc. et. al.*, No. 1:12-cv-00110-BLW, 2012 WL 2865979, *3 (D. Idaho July 11, 2012); *Hofhines v. BAC Home Loans Servicing, L.P.,* 2012 WL 3440458 (D. Idaho June 1, 2012) *adopted by* 2012 WL 3438327 (D. Idaho Aug. 15, 2012).  Therefore, the Court will also take judicial notice of the Note (Dkt. 5-2).

## 2.    Motion to Dismiss

### A.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 555.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id*. at 570.

In a more recent case, the Supreme Court identified two "working principles" that underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 1950. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atlantic Corp.*, 550 U.S. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*.

### B.    Quiet Title

As discussed in the Court's Order dismissing the initial complaint (Dkt. 9), a plaintiff must allege he can and will satisfy the remaining balance on the debt obligation in order to have a court quiet title in his favor in Idaho. *See Trusty v. Ray*, 73 Idaho 232, 236, 249 P. 2d 814, 817 (1952) ("A mortgagor cannot without paying his debt quiet title as against the mortgagee."); *see also Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009) (To maintain a quiet title action, plaintiffs must allege they are the rightful property owners, "i.e. that they have satisfied their obligations under the Deed of Trust."). The Court gave Plaintiffs leave to amend their complaint to allege tender of their outstanding loan debt. *Order*, Dkt. 9 at 6.

In their First Amended Complaint, Plaintiffs allege that they "could tender payment in good faith, but they do not know the true owner or party in interest." *First Am. Compl.*, Dkt. 11 ¶ 11. Plaintiffs explain that they "believe [the] creditor is FNMA,

but no assignment was ever recorded in Ada County, Idaho transferring any interest to FNMA." *Id.* ¶ 12.  Plaintiffs do not explain how the lack of a recorded assignment supports their quiet title action.

This Court has held that, "[e]ven assuming some yet unknown entity is the true Note Holder entitled to receive payments, the fact that the entity is unknown is not a cloud on the title[;] [r]ather, the security instrument itself is the cloud upon [Plaintiffs'] title." *Bacon v. Countrywide Bank FSB*, 2012 WL 642658, *7 (D. Idaho 2012) (citing *Power & Irrigation Co. of Clear Lake v. Capay Ditch Co.*, 226 F. 634, 639 (9th Cir. 1915).  Plaintiffs here do not challenge the validity of the security instrument – the Trust Deed – which expressly states that the Note or a partial interest in the Note "can be sold one or more times without prior notice to Borrower." *Deed of Trust*, Dkt. 14-4 at 5, ¶ 20.

"Unless and until the Note Holder fails to produce clear title and a warranty deed upon tender, [Plaintiff] may not fail to comply on [his] part with the provisions of the Note requiring payment." *Bacon,* 2012 WL 642658 at *7 (citing *Rischar v. Shields Et. Ux.*, 145 P. 294, 295 (Idaho 1914).  As the Ninth Circuit Bankruptcy Appellate Panel recently observed, the borrower "should be indifferent as to who owns or has an interest in the note so long as it does not affect the [borrower's] ability to make payments on the note." *Veal v. Am. Home Mortgaging Serv., Inc*., 450 B.R. 897, 912 (9th Cir. BAP 2011).

Plaintiffs here admit they have not made payments on their Note.  Although they allege that they "could tender payment" if only they knew the true owner's identity, there is no mention of unsuccessful attempts to make payments as directed in the Trust Deed. The Trust Deed (Dkt. 14-3 at 5) provides that payments be sent to the location designated

by the Lender, which was later identified as BANA in a Notice provided to Plaintiffs (Ex. A to First Am. Compl., Dkt. 11-1 at 2). Plaintiffs assert no confusion as to these directions. And their alleged confusion regarding who holds the Note fails to mitigate their inaction in tendering payment. The Court finds the amended complaint lacks any plausible allegation that Plaintiffs were or are willing to tender payment. Regarding their ability to tender payment, Plaintiffs acknowledge that they may no longer be able to refinance and tender payment of their loan, allegedly due to the securitization of their loan by Defendants. *First Am. Compl.*, Dkt. 11 ¶ 20. The Court finds that Plaintiffs has not satisfied the tender requirement for their quiet title action.

The Court next addresses Plaintiffs' allegation that the tender requirement "does not apply in this case." *Id.* at 6. According to Plaintiffs, the tender requirement is inapplicable because it defeats the purpose of the 2009 Treasury and Home Affordable Modification program (HAMP) guidelines. In support, Plaintiffs cite California Civil Code § 2923.5, which codified HAMP rules for California. However, Idaho has no equivalent law, and the HAMP guidelines have no private right of action. *Vida v. OneWest*, 2010 WL 5148473 at *3-4 (D. Or. 2010); *see also Escobedo v. Countrywide*, 2009 WL 4981618 at *3 (S.D. Cal. 2009) (Plaintiff was not the intended beneficiary under HAMP Agreement, thus lacked standing to enforce it). Plaintiffs fail to cite legal authority that HAMP relieves them of their obligation to tender payment, and the Court finds none.

### C.       Challenges to Securitization and Foreclosure Process

As part of their claim to quiet title, Plaintiffs raise a number of challenges to the securitization and foreclosure processes used by Defendants.  These challenges have been repeatedly rejected by the courts.  As discussed here, Plaintiffs identify no basis for this Court to depart from the mounting case law dismissing such arguments.

### (1)       Unrecorded assignment to FNMA

According to Plaintiffs, title was clouded by Defendants' failure to record an assignment to FNMA – which Plaintiffs assert is the true owner of their loan, by an unrecorded assignment – under Idaho Code § 45-1505.  Under that provision, "[t]he trustee may foreclose a trust deed . . . [if] [t]he trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in mortgage records . . .."  I.C. § 45-1505(1).  Plaintiffs are correct that the record lacks evidence of a recorded assignment to FNMA – which was identified as creditor of Plaintiffs' loan in an unrecorded Notice of change in loan servicer.  Ex. A to *First Am. Compl.*  However, the Court fails to see how this salvages or otherwise supports Plaintiffs' quiet title action ─ in the context of which the argument is raised. *First Am. Compl.*, Dkt. 11 ¶¶ 12, 13.  Plaintiffs cite no authority – nor does the Court find any – to support that a violation of Idaho recording requirements relieves Plaintiffs of having to tender payment.

### (2)       MERS's standing or capacity

Plaintiffs argue that MERS lacked capacity as a beneficiary, under Idaho Deed of Trust laws.  Even if true, MERS's lack of capacity would not remedy Plaintiffs' lack of

tender so as to revive Plaintiffs' quiet title action.  Moreover, the Ninth Circuit has found that MERS does have the power to act as nominee under the terms of a deed of trust. *Cervantes v. Countrywide*, 656 F.3d 1034, 1042 (9th Cir. 2011); *see also Silvas v. GMAC Mortg*, 2009 WL 4573234 at *8 (D. Ariz. 2009).  The courts have routinely dismissed arguments that MERS is not a true beneficiary, or that MERS is otherwise unable to effectively assign its interest in a deed of trust.  *See Hobson v. Wells Fargo Bank, N.A.*, 2012 WL 505917, *5 (D. Idaho Feb 15, 2012) (relying in part on *Trotter v. Bank of New York Mellon*, 275 P.3d 857 (Idaho 2012)).

Although Plaintiffs dispute MERS' authority almost exclusively in the context of their quiet title claim, Plaintiffs' prayer for relief asks the Court to declare that MERS is a sham beneficiary.  *First Am. Compl.*, Dkt. 11 at 21.  The Court agrees with the case law rejecting Plaintiffs' contention, and will therefore dismiss the requested declaratory relief. The Court will also dismiss Plaintiffs' accompanying request to "enjoin MERS from prosecuting foreclosure sales in Idaho." *Id*.

### (3)   Produce the original note

Also in the context of their quiet title claim, Plaintiffs argue that Defendants MERS and BANA must produce the original promissory note in order to foreclose on the property.  In *Armacost v. HSBC Bank*, cited by Plaintiffs, the court declined to decide whether assignment of a note is evidenced by assignment of the Deed of Trust.  2011 WL 825151, *10-12 (D. Idaho 2011).  However, the court in *Armacost* held that "there is no separate requirement under Idaho law that Defendant produce the original Note and Deed of Trust in order to [foreclose on the property]." *Id.*

The Idaho Supreme Court recently held that "a trustee may initiate non-judicial foreclosure proceedings on a deed of trust without first proving ownership of the underlying note . . .." *Trotter v. New York Mellon*, 275 P.3d 857, 862 (Idaho 2012).  This Court has agreed, rejecting a requirement that defendants prove ownership of the underlying note, in order to have standing.  *Cherian v. Countrywide Home Loans, Inc. et. al.*, No. 1:12-cv-00110-BLW, 2012 WL 2865979 *3 (D. Idaho July 11, 2012); *See also Hofhines v. BAC Home Loans Servicing, L.P.,* 2012 WL 3440458 (D. Idaho June 1, 2012) *adopted by* 2012 WL 3438327 (D. Idaho Aug. 15, 2012).

The Court thus rejects Plaintiffs' claims premised on a failure to prove ownership of the note, or to prove the "real party in interest," prior to foreclosure.  Plaintiffs' quiet title action, request to declare the parties' interests in the property, and request to require production of the original note will be dismissed.

### D.   Fair Debt Collection Practices Act Claim

Defendants move to dismiss Plaintiffs' claim that defendants violated the Fair Debt Collection Practices Act (FDCPA).  To the extent Plaintiffs contend that absence of the original note violates the FDCPA, the argument is rejected for reasons stated above. Plaintiffs also argue that Defendants violated the FDCPA by using unfair and deceptive means to collect a debt.  *First Am. Compl.*, Dkt. 11 at 8.

 Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.  Under the

Act, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

However, "a mortgagee and its assignee, including mortgage servicing companies, are not debt collectors under the FDCPA when the debt is not in default at the time the mortgage-holder acquires the debt." *Fitzgerald v. PNC Bank*, 2011 WL 1542138, at *3 (D. Idaho 2011); *see also Caballero v. Ocwen Loan Serv.*, Case No. C–09–01021 RMW, 2009 WL 1528128, at *1 (N.D. Cal. May 29, 2009); *De Dios v. Internat'l Realty & Investments*, 641 F.3d 1071, 1074-75 and n.3 (9th Cir. 2011).  Also, the federal district court in Oregon has held that the "activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the" FDCPA. *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002).

Plaintiff is correct that Defendant BANA sent Plaintiffs a notice indicating that BANA "is considered a debt collector" (Dkt. 11-1 at 1).  However, BANA's written affirmation that it is a debt collector, despite the many federal court decisions finding to the contrary, does not make it so.  And even if BANA were considered a debt collector under the FDCPA, Plaintiffs have not identified actions by BANA in violation of the FDCPA.  Plaintiffs merely offer formulaic recitations of elements in support of their claim, which are insufficient to escape dismissal.  *Bell Atlantic Corp.*, 550 U.S. at 555.

Accordingly, any claim by Plaintiffs based on the FDCPA will be dismissed.

### D.    Mail Fraud

Plaintiffs allege mail fraud under 18 U.S.C. § 1341, a criminal statute. *See First Am. Compl.*, Dkt. 11 ¶¶ 30-33.  Although Plaintiffs' allegations mimic the statutory language, they fail to support a cause of action for mail fraud.  Notably, the law does not provide for a private cause of action under the statute.  *See Heitman v. Stone Creek Funding Corp.,* 2007 WL 3333279, *3 (D. Idaho 2007). To the extent that Plaintiffs wish to maintain an action for violation of RICO under 18 U.S.C. § 1962(c), that too would fail.

Under 18 U.S.C. § 1962(c), it is unlawful for "any person employed by or associated with [an] enterprise . . . to conduct or participate directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." A civil claim for violation of that provision requires a plaintiff to allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985).  Also, "[t]o have standing under civil RICO, [a plaintiff] is required to show that the racketeering activity was both a but-for cause and a proximate cause of his injury." *See Rezner v. Bayerische Hypo–Und Vereinsbank AG,* 630 F.3d 866, 873 (9th Cir.2010) (citing *Holmes v. Securities Investor Prot. Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)). Proximate causation under RICO requires "some direct relation between the injury asserted and the injurious conduct alleged." *See Holmes v. Sec. Investor Protection Corp.,* 503 U.S. 258, 268 (1992).

Here, the basis of Plaintiffs' mail fraud claim is that "Defendants created the Notice of Default, Corporation Assignment of Deeds of Trust, and Appointment of Successor Trustee, which contained false and misleading representations used in attempt to obtain payments from Plaintiff and to wrongfully foreclose upon, obtain, and sell plaintiffs property." *First Am. Compl.*, Dkt. 11 ¶ 32.  Even if permitted to again amend their complaint to raise a RICO claim, Plaintiffs' cursory allegations fail to identify the particular nature of alleged fraud or anything that would support a pattern of racketeering activity that Defendants allegedly engaged in, let alone the existence of a RICO enterprise.  Absent specific allegations on these points, Plaintiff cannot sustain a civil RICO claim. *See, e.g., Clark v. Countrywide Home Loans, Inc.,* 732 F.Supp.2d 1038, 1046 (E.D.Cal. 2010).

Further, it appears that a foreclosure sale has yet to occur in this case, thus Plaintiffs are still the owners of record. As a result, Plaintiffs' injury is unclear. Even assuming an injury, it is difficult to see how the injury was directly caused by Defendants' alleged RICO violations, rather than Plaintiffs' failure to meet their loan obligations.

### E.    Fraud

Plaintiffs claim that the Appointment of Successor Trustee (Dkt. 1-3) was forged and "lacked the requisite authority," because it was not signed by the general partner, who alone had the "authority to make legally binding decisions and sign contracts." *First Am. Compl.*, Dkt. 11 ¶ 40.  Plaintiffs also assert that Defendants employed robo-signers

who were unaware whether the representations in the documents being signed were true, thus amounting to fraud.

Claims based on fraud or deceit must be pled with particularity. Fed. R. Civ. P. 9(b).  It is well-settled that mere conclusory allegations of fraud are not sufficient for the purposes of Rule 9. Fraud requires (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. *Faw v. Greenwood*, 101 Idaho 387, 389, 613 P.2d 1338 (1980) (citation omitted).  Plaintiffs do not satisfy these required elements.

Plaintiffs have not pled:  the representations alleged to be false, evidence that Defendants intended for Plaintiffs to rely upon those representations, which of the two Plaintiffs heard and relied upon the representations, or any resulting injury.  Other than a general claim of "robo-signing," Plaintiffs have not set forth with particularity the required elements of their fraud claim. *See Cervantes*, 656 F.3d at 1041 (affirming denial of claim for conspiracy to commit fraud through the MERS system because the allegations did not identify any representation made to the plaintiffs about the MERS system).

Accordingly, the Court will dismiss Plaintiffs' fraud claim.

### F.      Breach of Fiduciary Duty and Covenant of Good Faith & Fair Dealing

"In order to establish a claim for breach of fiduciary duty, a plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was

breached." *Bushi v. Sage Health Care, PLLC,* 146 Idaho 764, 203 P.3d 694, 699 (2009) (citation and marks omitted); *see also Giles v. Gen. Motors Acceptance Corp.,* 494 F.3d 865, 880–81 (9th Cir. 2007) (applying Nevada law). Here, Plaintiffs assert breach of fiduciary duty by Defendant ReconTrust. *See First Am. Compl*., Dkt. 11 ¶¶ 54–66.

In a non-judicial foreclosure, a trustee is "a common agent for the trustor and beneficiary," rather than a "true trustee with fiduciary duties." *Burton v. Countrywide Bank, FSB*, 2012 WL 976151, *6 (D. Idaho 2012) (citing *Gaitan v. Mortg. Elec. Registr. Sys., Inc.*, 2009 WL 3244729, *12 (C.D. Cal. 2009)).  However, it is true that "[a] fiduciary relationship does not depend upon some technical relation created by or defined in law, [and] exists in cases where there has been a special confidence imposed in another who . . . is bound to act in good faith and with due regard to the interest in one reposing the confidence." *Jones v. Runft, Leroy, Coffin & Matthews, Chtd.,* 125 Idaho 607, 873 P.2d 861, 868 (Idaho 1994) (citation omitted). For the court to find a fiduciary relationship, "[t]he facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the [alleged fiduciary] is acting not in his own behalf, but in the interest of the other party." *High Valley Concrete, LLC v. Sargent,* 149 Idaho 423, 234 P.3d 747, 752 (Idaho 2010) (citation omitted).

Here, Plaintiffs make no allegations that ReconTrust was acting with Plaintiffs' interests in mind, rather than on its own behalf, or on behalf of the lender or loan servicer. "Idaho law establishes that no fiduciary duty ordinarily arises between parties to an arm's length business transaction." *Wade Baker & Sons Farms v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, 42 P.3d 715, 721 (Idaho Ct. App. 2002).

Plaintiffs fail to allege that their relationship with ReconTrust was more than an arm's length commercial relationship. The Court will therefore dismiss Plaintiffs' claim for breach of fiduciary duty against ReconTrust.

Plaintiffs also claim that ReconTrust breached the covenant of good faith and fair dealing with Plaintiffs.  In Idaho, such a covenant is implied in every contract. *Idaho First Natl. Bank v. Bliss Valley Foods* 121 Idaho 266, 824 P.2d 841, 862 (Idaho 1991). The covenant is breached by "[a]ny action by either party which violates, nullifies or significantly impairs any benefit of the contact," and requires "that the parties perform in good faith the obligations imposed by their agreement." *Id.* at 863. However, the covenant arises only regarding the parties' agreed terms.  *Bushi v. Sage Health Care, PLLC,* 146 Idaho 764, 203 P.3d 694, 698 (Idaho 2009). The covenant "does not create new duties that are not inherent" in the parties' agreement. *Wesco v. Autobody Supply, Inc. v. Ernest,* 149 Idaho 881, 243 P.3d 1069, 1080 (Idaho 2010).

Plaintiffs have failed to identify a contract between ReconTrust and Plaintiffs, let alone any specific term within such contract that ReconTrust breached. Instead, Plaintiffs contend that ReconTrust violated the covenant by "noticing and conducting trustee sales while failing to perform statutory requisites for conducting such sales." *First Am. Compl.*, Dkt. 11 ¶ 58. Plaintiffs' allegations fail to support that ReconTrust breached the covenant of good faith and fair dealing; therefore, the Court will dismiss Plaintiffs' breach of covenant claim.

### G. Intentional Infliction of Emotional Distress

According to Plaintiffs, between April 2009 and the filing of their amended complaint, Defendants knowingly committed fraudulent acts and omissions regarding their property's title in order to coerce them to continue making payments. *First Am. Compl.*, Dkt. 11 ¶ 68. This allegedly caused "constant fear and anxiety of losing a family home [which] affected their emotional state over this time period." *Id.* "To prevail on a claim for intentional infliction of emotional distress: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Mortensen v. Stewart Title Guar. Co.,* 149 Idaho 437, 235 P.3d 387, 396 (Idaho 2010) (internal citations omitted). "To be actionable, the conduct must be so extreme as to 'arouse an average member of the community to resentment against the defendant.'" *Id.* at 446-47. It is not enough that the conduct merely exercise a legal right or be "unreasonable, unkind, or unfair." *Id.*

There is no indication here that Defendants have done more than exercise their legal rights under the Deed of Trust to initiate foreclosure proceedings upon Plaintiffs' uncontested noncompliance with the Deed. In this context, Plaintiffs' assertions of having suffered severe emotional distress are simply implausible. Nothing in Plaintiffs' allegations support the sort of outrageous conduct necessary for a claim of intentional infliction of emotional distress. The court will therefore dismiss Plaintiffs' claim for this relief.

### 3.      Motion to Amend Complaint

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment."  *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (issued 2 months after *Iqbal*).[1]  The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990).  The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims."  *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

On careful review of the First Amended Complaint and pleadings before it, the Court finds that it would be futile to again allow Plaintiffs leave to amend. Plaintiffs' complaint are largely comprised of legal argument which, as discussed herein, are governed by established case law supporting dismissal.  In light of that case law and upon review of Plaintiffs' claims thus far, the Court finds that the addition of other facts would not cure the First Amended Complaint's deficiencies.  Accordingly, the Court will deny Plaintiffs' motion.

---

[1] The Court has some concern about the continued vitality of the liberal amendment policy adopted in *Harris v. Amgen*, based as it is on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), suggesting that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim. . .." Given *Twombly* and *Iqbal*'s rejection of the liberal pleading standards adopted by *Conley,* it is uncertain whether the language in *Harris v. Amgen* has much of a life expectancy.

## ORDER

**IT IS ORDERED THAT:**

1.      Defendant's Motion to Take Judicial Notice re: Motion to Dismiss (Dkt. 14) is **GRANTED**.

2.      Defendant's Motion to Take Judicial Notice re: Reply Memorandum (Dkt. 22) is **GRANTED**.

3.      Defendants' Motion to Dismiss (Dkt. 13) is **GRANTED**.

4.      Plaintiffs' Second Motion to Amend Complaint (Dkt. 26) is **DENIED**.

5.      This matter is dismissed in its entirety with prejudice.  Judgment will be entered separately.

DATED: September 26, 2012

B. Lynn Winmill
Chief Judge
United States District Court